UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRISCILLA LYNN DIXON

   Plaintiff,

v.             Case No: 2:16-cv-679-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____

# OPINION AND ORDER

Plaintiff Priscilla Lynn Dixon seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.[1]

## I. Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the residual functional capacity ("RFC") findings of the Administrative Law Judge ("ALJ") adequately account for Plaintiff's moderate limitations in concentration, persistence and pace;

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 21, 23.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

(2) whether the ALJ properly relied upon the testimony of the Vocational Expert ("VE") at step five; and (3) whether substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

## II. Summary of the ALJ's Decision

Plaintiff was 53 years old at the time of the hearing before ALJ Hortensia Haaversen on January 21, 2015. Tr. 13, 18. Plaintiff alleged disability due to arthritis and chronic pain in her back, anxiety and depression. Tr. 18, 199. On April 16, 2015, the ALJ issued a decision finding Plaintiff not disabled from November 23, 2010, the alleged disability onset date, through December 31, 2011, the date last insured. Tr. 13-23. In her decision, at step two of the sequential process,[3] the ALJ found that Plaintiff had the severe impairments of "lumbosacral myofascial pain syndrome status post a history of two lumbar spinal surgeries on June 23, 2003 for an L4-5 disc herniation and November 23, 2010 for recurrent herniation with hemilaminectomy, medial facetectomy, foraminotomy, and removal of the extruded disc; depression; and anxiety." Tr. 15-16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. Tr. 16-17. In doing so, she found that Plaintiff had mild restrictions in activities of daily living and social functioning and a moderate limitation in concentration, persistence or pace. Tr. 16-17. Prior to step four, the ALJ then determined that during the relevant period Plaintiff had the RFC to

---

[3] The sequential evaluation process is described in the ALJ's decision. Tr. 14-15.

perform light work[4] with additional physical restrictions. Tr. 17. To account for Plaintiff's mental limitations, the ALJ limited Plaintiff to jobs that required her to perform simple, routine tasks. Tr. 17. Next, at step four the ALJ found that Plaintiff could not perform her past relevant work as a meat wrapper, because the job is generally performed at the medium exertional level. Tr. 21-22. At step five, however, based on Plaintiff's age (49 on the alleged disability onset date and 50 as of the date last insured), education, work experience and RFC, and based on the testimony of the VE, the ALJ found there were unskilled jobs at the light exertional level existing in significant numbers in the national economy that Plaintiff could perform. Tr. 22-23. As a result, she found Plaintiff was not disabled. Tr. 23.

## III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's

---

[4] The regulations define light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[5] Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017) (declining to apply SSR 16-3p retroactively to the ALJ's decision); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

*Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. Plaintiff's RFC

In finding Plaintiff could perform light work, the ALJ restricted Plaintiff to jobs requiring no more than simple, routine tasks based on nonexertional limitations. Tr. 17, 21. Plaintiff first argues this restriction did not adequately account for the ALJ's finding that Plaintiff had moderate limitations in sustaining concentration, persistence and pace and moderate limitations in social functioning.[6] Doc. 19 at 7 (citing Tr. 17, 21). Moreover, she argues the ALJ failed to sufficiently explain how this restriction accommodated these limitations, and instead the ALJ should have performed a "function by function assessment of limitations stemming from Plaintiff's mental impairments" and included them in the hypothetical to the VE. *Id.* at 7-8 (citing to *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011)). The Commissioner responds that the ALJ's RFC finding and hypothetical adequately account for Plaintiff's moderate difficulties with concentration, persistence and pace. Doc. 20 at 5 (citing Tr. 17, 49-50). The Court finds the ALJ properly considered Plaintiff's mental limitations and included them in her hypothetical to the VE; and thus substantial evidence supports the RFC.

---

[6] Plaintiff erroneously states the ALJ found moderate restrictions in social functioning. Doc. 19 at 7. Instead, the ALJ found only a mild restriction in this area. Tr. 16.

After the ALJ found Plaintiff's anxiety and depression, among other physical impairments, to be severe, she discussed whether Plaintiff's impairments or combination of impairments met or equaled a listing. Tr. 15-16. In doing so, the ALJ considered four broad functional areas for evaluating mental disorders known as the "paragraph B" criteria.[7] Tr. 16-17. The ALJ determined Plaintiff had mild restrictions in activities of daily living and social functioning and moderate difficulties in concentration, persistence and pace. Tr. 16-17. The ALJ discussed her reasoning for these findings:

> In activities of daily living, [Plaintiff] had mild restriction. The medical records show that during the period at issue, [Plaintiff] was able to perform activities of daily living with minimal limitation. Even after the period at issue, [Plaintiff] was able to care for her ill mother, perform household chores, and take care of pets and horses. Furthermore, any limitation in this domain would appear to be from her physical impairments, and not due to any mental impairment
>
> In social functioning, [Plaintiff] had mild difficulties. [Plaintiff] reported that after her daughter's passing, she isolated herself and stopped socializing. In her function report, she states that she has no social activity whatsoever. (Exhibit 5E/5) However, the undersigned notes that [Plaintiff] reported that a neighbor helps her with chores on a weekly basis. [Plaintiff] is close to her mother, and has reported spending extensive time caring for her mother during illnesses. [Plaintiff] is able to go to public places without difficulty, and has no history of violence. She admits to her treating physicians that her panic attacks are well-controlled with medication. At most, any limitation in this domain is only mild.
>
> With regard to concentration, persistence or pace, [Plaintiff] had moderate difficulties. In her function report, [Plaintiff] states that she is only able to pay attention for about ten minutes. However, she admits that she is able to follow instructions well. As will be discussed in full later in this decision, [Plaintiff] has admitted being able to drive long distances and care for her ill mother without any particular assistance.

---

[7] 20 C.F.R., Part 404, Subpart P. Appendix 1.

> The medical records reflect no significant limitation in this domain. The undersigned finds that [Plaintiff] has, at the very most, a moderate limitation in this domain.

*Id.*

In her later analysis of Plaintiff's RFC, the ALJ discussed the relevant records during the approximate one-year time period at issue,[8] noting that most of the medical records submitted were not from that time frame but nonetheless considering those records to "understand the extent of [Plaintiff's] symptoms and limitations during the period at issue." Tr. 18. She first discussed Plaintiff's earliest medical record in November 2006 from Rodolfo Saludo, M.D., Plaintiff's primary care physician, in which Plaintiff reported anxiety, occasional panic attacks and difficulty sleeping. Tr. 19, 392. Plaintiff was diagnosed with anxiety and depression and prescribed Lexapro and Alprazolam. Tr. 393. Plaintiff testified at her hearing that her daughter had passed away in 2005, and she had been taking medications since that time. Tr. 41. The ALJ summarized a subsequent visit in November 2008, in which Plaintiff reported that she had more difficulty around the holidays because she missed her daughter. Tr. 19, 386. She was still on the same medications at that time, but she reported they were working fine. Tr. 387.

As noted by the ALJ, by 2010 to 2011 Plaintiff's examinations with Dr. Saludo, for the most part, showed normal mental status. Tr. 19, 381. In a record from June 2011, Plaintiff's judgment and insight were noted as intact, and she was oriented as

---

[8] As noted, the time period is from November 23, 2010, the onset of disability, through the date Plaintiff was last insured, December 31, 2011. Tr. 13, 18.

to person, place and time and was stable. Tr. 365. Her memory showed no sign of dementia. *Id.* As to Plaintiff's mood and affect, however, Dr. Saludo noted that Plaintiff was experiencing anxiety and depression, especially during the anniversary of her daughter's death, or the sudden death of friends or family. *Id.* But two months later, in a visit in August 2011, Plaintiff's psychiatric examination was within normal limits as to her judgment and insight; her orientation to time, person and place; her memory; and her mood and affect. Tr. 362. The ALJ discussed in her opinion that although the medical records indicate "little mental status abnormalities with appropriate medication," she gave Plaintiff "the benefit of the doubt" and limited her RFC to simple, routine tasks. Tr. 21.

First, as noted by the Commissioner and discussed by the ALJ, the paragraph B ratings are not an RFC assessment. Doc. 20 at 5; Tr. 17. Instead, they are used to rate the severity of Plaintiff's mental impairments at steps two and three of the evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (a)(4)(iii), 404.1520a(d)(1), (2); SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ acknowledged the mental RFC assessment in steps four and five require a more detailed assessment, made that assessment in her decision and concluded the RFC "reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis." Tr. 17-23. Contrary to Plaintiff's argument, the Court's review of the record reveals that the ALJ sufficiently considered and assessed Plaintiff's functional limitations caused by her mental impairments.

Second, the Court finds the ALJ's limiting Plaintiff to simple, routine tasks sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace given the evidence in the record. Tr. 51. After the ALJ presented an initial hypothetical to the VE, the VE identified three jobs Plaintiff would be capable of performing that were light, unskilled jobs: counter/food attendant, cafeteria helper and cashier. Tr. 50. The ALJ then added to the hypothetical the assumption that the individual would be limited to simple, routine tasks, and asked if such a person still would be capable of performing the jobs indicated by the VE. Tr. 50-51. The VE responded in the affirmative. Tr. 51. Furthermore, the medical evidence summarized above and considered by the ALJ shows that Plaintiff can engage in such simple, routine tasks or unskilled work despite her moderate limitations in concentration, persistence or pace. The Eleventh Circuit has held, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel,* 631 F.3d at 1180 (citations omitted); *see Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876-77 (11th Cir. 2012); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x, 869, 872 n.1 (11th Cir. 2011).

### b. *VE testimony*

The Court further finds the VE's testimony constitutes substantial evidence to support the RFC, as it sufficiently accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence and pace. "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999)). As noted, during the hearing, the VE identified three jobs at the light, unskilled work level that a hypothetical person with Plaintiff's RFC and additional functional limitations can perform. Tr. 50-51. Two of the jobs identified by the VE – the cashier and the cafeteria worker – have a specific vocational preparation ("SVP") level of 2, and the other job an SVP of 3, which corresponds to unskilled work. *See* Dictionary of Occupational Titles §§ 211.462-010, 311.677-010 (4th ed. 1991); SSR 00-4p, 2000 WL 1898704 at *3 (Dec. 4, 2000). Unskilled work requires "little or no judgment to do simple duties." 20 C.F.R. § 416.968(a). Thus, these positions do not exceed Plaintiff's mental limitations in the RFC to perform simple, routine, repetitive work. Tr. 22.

Accordingly, the ALJ discussed in her decision:

[Plaintiff's] ability to perform all or substantially all of the requirements of [light] work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the [ALJ] asked the [VE] whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as: counter

attendant (DOT #311.677.014) with 15,000 jobs in Florida and 235,000 jobs nationwide; cafeteria helper (DOT #311.677-010), with 7,500 jobs in Florida and 112,000 jobs nationwide; and cashier (DOT #211.462-010), with 81,000 jobs in Florida an 1,300,000 jobs. All of the jobs cited are the light exertional level, and are unskilled. The undersigned notes that even if the additional limitation of [Plaintiff] being able to sit for no more than one hour at a time, [Plaintiff] would still be able to perform the jobs cited above.

Tr. 22-23.

Plaintiff argues that the VE's testimony is not supported by substantial evidence because the reasoning level of each of the identified jobs is two or higher, which exceeds Plaintiff's limitation to simple, routine work. Doc. 19 at 10. Thus, Plaintiff argues a conflict exists between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), in spite of the VE's testimony to the contrary. *Id.* (citing Tr. 52). The Commissioner responds, and the Court agrees, the jobs identified by the VE are consistent with the RFC, which limited Plaintiff to no more than simple, routine tasks. Doc. 20 at 9. The Commissioner thus asserts the Court need not reach the issue of whether the VE's testimony was consistent with the DOT. *Id.* And, if there was a conflict, the ALJ was not required to resolve it because she was not made aware of one. *Id.*

Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." *Id.* Furthermore, she must resolve the conflict before relying on the VE and explain in

her decision how she resolved the conflict. *Id.* The Eleventh Circuit has held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones*, 190 F.3d at 1230.

In this case, the ALJ properly complied with SSR 00-4p. *See* SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). The ALJ limited Plaintiff's RFC to simple and routine tasks and included this limitation in her hypothetical to the VE. Tr. 51. The VE testified that a hypothetical individual with Plaintiff's limitations would be able to work as a counter/food attendant, cafeteria helper and cashier. Tr. 50-51. The ALJ inquired whether the VE testimony was consistent with the DOT. Tr. 52. The VE testified that it was, except that his discussion about employment practices with respect to work absences was based on his 38 years of experience in the field. *Id.* The VE did not identify any further discrepancy, nor did Plaintiff's counsel identify or raise any conflicts by questioning the VE. *See id.* The ALJ noted the VE's explanation in her decision. Tr. 23.

The ALJ was not under an independent obligation to identify and resolve any inconsistency aside from that identified by the VE. *See Dickson v. Comm'r of Soc. Sec.*, No. 5:13-CV-48-OC-DNF, 2014 WL 582885, at *1 (M.D. Fla. Feb. 13, 2014) ("No conflicts were raised during the hearing by the vocational expert or by Plaintiff's representative. Neither case law nor SSR 00–4p require an ALJ to resolve a conflict that was not identified and was not otherwise apparent."); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012). As a result, the Court finds that the ALJ properly relied on the VE's testimony at step five.

### c. *Plaintiff's credibility*

With respect to Plaintiff's credibility, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible" for the reasons explained in the decision. Tr. 18. After discussing Plaintiff's medical evidence at length, the ALJ summarized her reasons for discounting Plaintiff's credibility in part as follows:

> Overall, the medical records do not support [Plaintiff's] allegations. During the period at issue, [Plaintiff] did undergo spinal surgery. However, within a month she reported almost complete improvement. Subsequent medical records during the period at issue do not support [Plaintiff's] allegations that she had severe back and leg pain, or that her depression and anxiety were so severe that she was unable to work. The medical records do show exacerbation of her back pain shortly after her date last insured. However, [Plaintiff] had a good response to treatment with medication and injections. Notably, none of her doctors has ever advised [Plaintiff] that she is disabled or filled out a medical source statement indicating any significant limitations.

Tr. 21.

Plaintiff argues the ALJ improperly considered her performance of mundane daily activities and her failure to obtain a medical source statement in assessing her credibility, and thus substantial evidence does not support the ALJ's credibility assessment. Doc. 19 at 10-12. The Commissioner responds the ALJ properly assessed Plaintiff's credibility. Doc. 20 at 14-20.

The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). "If the ALJ discredits

subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d R 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Here, based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence. Tr. 18-21. After her extensive consideration of Plaintiff's medical evidence, the ALJ articulated explicit and adequate reasons for discounting Plaintiff's credibility, primarily based on Plaintiff's lack of medical evidence. Tr. 21. Based on the foregoing, substantial evidence supports the ALJ's credibility determination.

V. Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff was not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 1st day of December, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record